**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| ex rel. TERRI KING, | § | |
| | § | |
| Plaintiff and | § | |
| Plaintiff-Relator, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-018 |
| | § | |
| THE UNIVERSITY OF TEXAS HEALTH | § | |
| SCIENCE CENTER-HOUSTON, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Terri King sued her former employer, The University of Texas Health Science Center-Houston (UTHSCH), alleging violations of the federal False Claims Act (FCA), 31 U.S.C. §§ 3729–3733.  King alleged that UTHSCH defrauded the federal government by, among other things, covering up misconduct by one of its professors who received federal research grants.  (Docket Entry No. 48, ¶¶ 55–60).  King also alleged that UTHSCH retaliated against her for reporting this misconduct, eventually forcing her out of several positions.  King seeks damages on behalf of herself and the United States.  (*Id*. at ¶¶ 61–62).  The United States declined to intervene.

UTHSCH moved to dismiss.  Based on the pleadings; the motion, response, and reply; the record; and the applicable law, this court grants UTHSCH's motion to dismiss based on lack of subject-matter jurisdiction and King's failure to state a claim, (Docket Entry No. 20).  The reasons are explained below.

I.      **Background**

King was an assistant professor at UTHSCH.  (Docket Entry No. 1, ¶ 5).  In 2001, King was hired as a statistician and geneticist to work in a research lab under Dr. Dianna M. Milewicz's supervision.  (*Id*, ¶ 8).  King alleged that during her time at UTHSCH, she learned that Milewicz was falsifying research data and results and was violating federal regulations by failing to obtain her human research subjects' written informed consent.  (*Id*., ¶¶ 6, 8).  King alleged that Milewicz's fraud was in connection with government-funded research and that Milewicz had used prior falsified results to get federal funding.  (*Id*.).  King reported her concerns to UTHSCH officials and participated in investigations of Milewicz.  King alleged that UTHSCH failed to take steps to stop Milewicz from defrauding the government.  King also alleged that UTHSCH retaliated against her by hampering her research, relocating her to less favorable positions that were unlikely to put her on track for tenure, and constructively firing her when she continued to raise concerns.  (Docket Entry No. 1, ¶¶ 6, 9–22, 28–54).

King sued UTHSCH, alleging that it:  (1) violated the FCA's *qui tam* provisions by failing to investigate Milewicz's actions, knowingly maintaining false and incomplete records on human research subjects, falsely certifying that it would follow federal regulations and standards for government-funded research, and falsely certifying that it would protect whistleblowers, (Docket Entry No. 1, ¶¶ 55–60); and (2) violated the FCA's antiretaliation provision by forcing her out of her positions after she reported Milewicz's misconduct, (*Id*. at ¶¶ 61–62).  King seeks to recover on behalf of the United States the damages resulting from UTHSCH's fraudulent actions, and, on her own behalf, individually, a portion of what the court awards to the United States.  King also seeks

damages and front and back pay, resulting from UTHSCH's retaliation against her. (*Id.* at 51–52). The United States has declined to intervene. (Docket Entry No. 9).

UTHSCH filed a motion to dismiss under three theories: (1) King failed to state a claim because UTHSCH is not a "person" or "employer" under the FCA; (2) money-damage suits against UTHSCH are barred by sovereign immunity, and (3) King failed to plead fraud with particularity. (Docket Entry No. 21).

## II.     The Legal Standards

### A.     Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation and internal quotation marks omitted). The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of a plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (citation and internal

quotation marks omitted); *see also Clark*, 798 F.2d at 741.  The court may consider matters outside the pleadings, such as testimony and affidavits, to resolve a factual challenge to subject-matter jurisdiction, without converting the motion to dismiss to one for summary judgment.  *See Garcia*, 104 F.3d at 1261; *Olivier v. Kelly*, 2012 WL 4207301, at *2 (W.D. La. Aug. 31, 2012) ("Under Rule 12(b)(1), a court has wide discretion to review affidavits, and other documents outside of the pleadings . . . to resolve disputed jurisdictional facts. In such instances, a court's reference to evidence outside of the pleadings does not convert the motion to a Rule 56 summary judgment motion." (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995))).

### B.      Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  *Twombly* abrogated the Supreme Court's prior statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *See Twombly*, 550 U.S. at 562–63 ("*Conley*'s 'no set of facts' language . . . is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . .").  To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. 544).  The Court explained that "the pleading standard Rule 8 announces does

4

not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)).  However, a plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) (per curiam) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

## III.    Analysis

### A.    Is the Defendant Subject to Suit Under the FCA's *Qui Tam* Provisions?

UTHSCH argues that King's *qui tam* claim should be dismissed.  UTHSCH asserts that it is a state entity and states are not "persons" under the FCA.  (Docket Entry No. 21).  Under the FCA,

a "relator" may file a civil suit and recover damages on behalf of the United States against any "person" who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" to "an officer, employee, or agent of the United States." 31 U.S.C. §§ 3729(a)(1)(A)–(B); 3730(b)–(c).  Private individuals derive standing to sue from the United States, 31 U.S.C. §§ 3729–3733.  The FCA does not expressly authorize *qui tam* suits against a State.  In *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000), the Supreme Court held that a State and State entities are not "persons" who may be sued under the FCA.  *Id.* at 787.[1]

King concedes that under *Stevens*, a state is not subject to FCA *qui tam* claims.  She argues that she may sue UTHSCH because it is a private entity.  (Docket Entry No. 22, at 2).  In deciding whether UTHSCH is an arm of the state, this court must "examine the particular entity in question and its powers and characteristics as created by state law . . . ."  *Khan v. S. Univ. & Agric. & Mech. Coll. Bd. of Supervisors*, 2005 WL 1994301, at *2 (5th Cir. Aug. 19, 2005) (citing *Laje v. R.E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982); *see also Adrian*, 363 F.3d at 401 (applying the arm-of-the-state test to a Rule 12(b)(6) motion to dismiss a *qui tam* claim).  Although courts usually find that public educational institutions are state entities, "each situation must be addressed individually because the states have adopted different schemes both intra and interstate,

---

[1]  King acknowledges that *Stevens* applies to this case but urges this court to overturn it on the basis of the Supreme Court's "circular" reasoning.  (Docket Entry No. 24, at 21–23).  This court is, of course, bound by the Supreme Court precedent.

In *Stevens*, the Supreme Court also held that courts should decide whether a defendant is subject to suit under the FCA before reaching a sovereign immunity issue.  *Id.* at 779.

in constituting their institutions of higher learning." *Richardson v. S. Univ.*, 118 F.3d 450, 454 (5th Cir. 1997), *cert. denied*, 522 U.S. 1078 (1998) (citing *United Carolina Bank v. Bd. of Regents*, 665 F.2d 553, 557 (5th Cir. Unit A 1982)).

The Fifth Circuit applies the following factors to decide whether a particular defendant is a state entity: (1) whether the state statutes and case law characterize the agency as an arm of the state; (2) the entity's funding sources; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. *Khan*, 2005 WL 1994301, at *2 (citing *Richardson*, 118 F.3d at 452); *Clark*, 798 F.2d at 736.[2]

### 1.    Texas Law Characterizes UTHSCH as a State Entity

---

[2] This version of the arm-of-the-state test was developed for sovereign-immunity disputes relating to whether a defendant was a state or local entity. *See, e.g.*, *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 438–40 (5th Cir. 1985), *cert. denied*, 474 U.S. 1057 (1986). A similar test used by the Fourth Circuit may be more appropriate for cases in which the issue is whether a defendant is a state or private entity:

> 1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State.

*S. Carolina Dept. of Disabilities & Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 303 (4th Cir. 2008) (internal quotation omitted). In this case, the result is the same under this test.

The University of Texas was founded by the Republic of Texas in 1839 and reestablished after statehood in Texas's 1866 Constitution. TEX. CONST. art. VII, § 10 ("The Legislature shall as soon as practicable establish, organize and provide for the maintenance, support and direction of a University of the first class, to be located by a vote of the people of this State, and styled, 'The University of Texas', for the promotion of literature, and the arts and sciences, including an Agricultural, and Mechanical department."). UTHSCH is part of the University of Texas System. TEX. EDUC. CODE. § 65.02(a)(9). A public university system is considered a state agency. TEX. GOV'T CODE § 572.002(10)(B).

Texas courts also consider UTHSCH to be an agency of the State of Texas. *See Klein v. Hernandez*, 315 S.W.3d 1 (Tex. 2010) (holding that a UTHSCH medical resident was an "employee of [a] state agency" for the purposes of determining whether the resident was entitled to sovereign immunity); *see also Illoh v. Carroll*, 2012 WL 1570991, at *1 (Tex. App.—Houston [14th Dist.] May 03, 2012, no pet. h.) (noting that UTHSCH is a "governmental entity" and that its doctors are governmental employees who are generally immune from state-law tort claims arising out of their conduct as state employees); *UTHSC v. Cheatham*, 357 S.W.3d 747 (Tex. App.—Houston [14th Dist.] 2011, pet. filed) (stating that UTHSCH doctors are government employees).

## 2.    UTHSCH Receives Significant State Financial Support

UTHSCH substantially relies on state funding, although it receives money from federal, private, and local sources as well. In 2009, UTHSCH took in more than $ 26 million from student tuition and fees; received about $170 million in direct state appropriations; and received over $25 million from other state agencies. UTHSCH received about $148 million in federal funding, $15 million of which first passed through other state agencies. UTHSCH earned millions in additional

revenue from other sources, including local-sponsored programs ($129 million), private-sponsored programs ($28 million), providing health care and medical, dental, and nursing educational services ($139 million), professional fees ($128 million), gifts ($18 million), and investment income ($14 million).  (Docket Entry No. 24, Ex. A, at 5).[3]

The Fifth Circuit has noted that "the most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds."  *Richardson*, 118 F.3d at 455 (citing *McDonald v. Bd. of Miss. Levee Comm'rs*, 832 F.3d 901, 907 (5th Cir. 1987).  While acknowledging that UTHSCH receives state funding, King argues that UTHSCH has "two distinct and different operations[:] . . . the state funded component, which runs the medical, dental and nursing schools [and] . . . the proprietary component . . . that provides care to patients in return for payment." (Docket Entry No. 24, at 6–7).[4]  King argues that the large revenue generated by UTHSCH from non-state sources, such as providing patient care and medical and dental education, means that there is little risk that a money judgment would burden taxpayers.  (*Id.* at 13).  King specifically points to Texas Education Code § 64.004, which authorizes UTHSCH to collect and maintain control of tuition payments and fees.

---

[3]  This court takes judicial notice of UTHSCH budget, Exhibit A of King's response to the motion to dismiss.  (Docket Entry No. 24, Ex. A).  The figures are not subject to reasonable dispute. *See United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) ("In deciding a motion to dismiss the court may consider . . . matters of which judicial notice may be taken." (citation omitted)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (stating that "matters of which a court may take judicial notice" may be considered in ruling on a Rule 12(b)(6) motion); FED. R. EVID. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[4]  King also identified a third "research component," consisting primarily of federal grants. (Docket Entry No. 24, at 7).

9

The Fifth Circuit has rejected a similar argument.  In *United Carolina Bank v. Bd. of Regents of Stephen F. Austin State Univ.*, 665 F.2d 553 (5th Cir. 1982), the court stated that "[t]he key is not the ability to identify segregated funds, but the larger concept of jurisdiction over state sovereignty which the eleventh amendment proscribes."  *Id.* at 560.  The court looked to "whether use of these unappropriated funds to pay a damage award against [the State university defendant] would interfere with the fiscal autonomy and political sovereignty of Texas."  *Id.* at 561.  The appellate court reversed the district court's holding that sovereign immunity was not implicated because the university defendant could pay an award out of bond proceeds, gifts, and donations, which were held separately from State allocations.  The appellate court ruled as follows:

> These local funds, collected under authority of state law, [Texas Education Code] § 51.004, are either held in the Treasury or restricted as to use.  In either event they are subject to audit and budget planning.  Thus any award from those funds would directly interfere with the state's fiscal autonomy.

*Id.*  This result is consistent with other Fifth Circuit case law.  *See also Lewis v. Midwestern State Univ.*, 837 F.2d 197, 198 (holding that a public university that received private donations, municipal taxes, and revenues from commercial operations was immune to money judgments because it was an arm of the State); *Richardson*, 118 F.3d at 455 ("Although Southern has the authority to raise funds by accepting donations, bequests, or other forms of financial assistance from private persons or the federal government . . . [b]ecause Southern and its Board are considered an agency of the State of Louisiana, any money judgments rendered against Southern or its Board are payable from funds appropriated by the Louisiana Legislature."); *Jagnandan v. Giles*, 538 F.2d 1166, 1175–76 (5th Cir. 1976) (holding that awarding tuition refunds to the plaintiffs would implicate the state treasury, in part because "these types of fees were factored into the preparation of the annual budget

for [the university defendant] and were relied upon by the state legislature in determining the maximum amount of expenditures allowed.").[5]  This factor supports finding that UTHSCH is an agency of the  State of Texas.

### 3. UTHSCH Has Limited Local Autonomy, Holds Property Through the State, and Is Concerned with Statewide Problems

The third, fourth, and sixth arm-of-the-state factors also support finding that UTHSCH is a State entity.  Although UTHSCH has some autonomy, it is heavily regulated and supervised by the State of Texas.  The University of Texas System is governed by a nine-member Board of Regents which is appointed by the Texas governor and approved by the Texas Senate.  TEX. EDUC. CODE § 65.11.  The Board manages, operates, and supports its constituent institutions.  TEX. EDUC. CODE § 65.31.  As part of the UT System, all of UTHSCH's contracts must be approved by the Board or entered according to its rules.  TEX. EDUC. CODE § 65.34.  The UT System is required to submit to the governor and other public officials annual financial report detailing how it used its appropriated money and listing its assets and liabilities.  TEX. GOV'T CODE § 2101.011.  *See, e.g.*, *Richardson*, 118 F.3d at 455 (finding that a university's autonomy was limited when it was governed by a State-appointed board).  The UT System may issue bonds, but these must be approved by the Texas attorney general.  TEX. EDUC. CODE § 65.46.  The Board has the exclusive authority to manage and control the UT System's land.  State laws that restrict public land sales apply to land held by the UT System.  TEX. EDUC. CODE § 65.39.  As a state entity, the UT System has the power of eminent domain, and the land it acquires becomes State property.  TEX. EDUC. CODE § 65.33.

---

[5]  King's citation to *Pendergrass v. Greater New Orleans Expressway Comm'n*, 144 F.3d 342 (5th Cir. 1998), is inapposite.  In *Pendergrass*, the Fifth Circuit analyzed whether the defendant's funding originated from the State or from local-government sources.  *Id.* at 346.  The issue here is whether UTHSCH is a State or private entity.

Although UTHSCH is based in Houston, the UT System operates campuses and programs throughout the State of Texas, including in Austin, Arlington, El Paso, Dallas, San Antonio, Galveston, Tyler, Brownsville, and Houston.  TEX. EDUC. CODE § 65.02.  These factors strongly support finding UTHSCH a state entity.

### 4.      UTHSCH Is Not Amenable to Suit

Texas law gives the UT System the authority to sue on its own behalf and on behalf of UTHSCH in order to collect debts.  TEX. EDUC. CODE § 65.42 ("A suit by The University of Texas System on its own behalf or on behalf of a component institution of The University of Texas System to recover a delinquent loan, account, or debt owed to The University of Texas System or a component institution of The University of Texas System must be brought in Travis County.").  Texas law does not appear to give UTHSCH the authority to file suits for other purposes or to give plaintiffs the authority to sue UTHSCH directly.

Courts have not treated the resolution of the "authority to sue and be sued" prong as dispositive unless the state has waived its sovereign immunity.  *See, e.g.*, *Richardson*, 118 F.3d at 456.  King points out that UTHSCH issues a compliance manual that includes a section discussing the FCA,[6] but she concedes that this is insufficient to waive UTHSCH's sovereign immunity. (Docket Entry No. 24, at 17–20).  King asks for the opportunity to conduct discovery on this point, arguing that because "the nature and terms of [UTHSCH's agreements with the federal government]

---

[6] King alleges that UTHSCH includes statements about the FCA in its manuals in response to regulations issued by the U.S. Department of Health and Human Services and the Office for Human Research Protections governing Federalwide Assurance for the Protection of Human Subjects (FWA).  The FWA requires that institutions receiving federal funds comply with applicable federal, state, local, or institutional laws, regulations, and policies.  OMB No. 0990-0278.  King does not cite any laws or regulations that apply the FCA's *qui tam* provisions to UTHSCH.

are not part of the public domain[,] . . . the only way for King to find out what UTHSCH agreed to in order to be eligible to receive federal grants is through discovery in this case." (*Id*. at 19).

The discovery King seeks is unnecessary. Although a state may waive sovereign immunity, that does not make it a "person" under the FCA's *qui tam* provisions. And King provides no support for her position that a state may waive its sovereign immunity through undisclosed agreements with the federal government. The Supreme Court has stressed that the "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 675 (1999). A state's consent to suit must be "unequivocally expressed" in the text of a statute. *Sossamon v. Texas*, — U.S. — , 131 S.Ct. 1651 (2011), *see also Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 99 (1981). Waiver may not be implied. *College Savings Bank*, 527 U.S. at 682. The federal government's authority to abrogate states' sovereign immunity is similarly limited and requires a "clear statement" by Congress. *Dellmuth v. Muth*, 491 U.S. 223, 229 (1989); *see also Thomas v. Univ. of Hous.*, 155 F. App'x 115 (5th Cir. 2005) (holding that Congress waived a State university's sovereign immunity under Section 504 of the Rehabilitation Act by enacting a provision stating: "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . ."). Both federal and Texas statutes are publicly available. King's failure to cite to any federal or state laws is fatal to her abrogation and waiver arguments.

In examining the arm-of-the-state factors applied to this case, this court holds that UTHSCH is not subject to suit under the FHA's *qui tam* provisions. This outcome is consistent with decisions by other Fifth Circuit courts finding that UTHSCH and other public university medical centers and

hospitals are state entities. *See Duncan v. UTHSCH*, 469 F. App'x. 364, 366 (5th Cir. 2012) ("As

a public university, [UTHSCH] enjoys the state's sovereign immunity."); *Sullivan v. Univ. of Tex.*

*Health Sci. Ctr. at Houston Dental Branch*, 215 F. App'x 391, 392 (5th Cir. 2007) ("It is undisputed

that UTHSC, as an arm of the State, is entitled to Eleventh Amendment immunity absent

Congressional abrogation or voluntary waiver."); *Watson v. UTSCH*, 2009 WL 1476469, at *1 (S.D.

Tex. May 27, 2009) ("Defendant UTHSC, as a part of the University of Texas System, is a State

agency protected by Eleventh Amendment sovereign immunity."); *Butcher v. UTSCH*, 2008 WL

4935723, at *2 (S.D. Tex. Nov. 18, 2008) ("The Fifth Circuit has consistently found that the

University of Texas, and its health institutions, are protected by sovereign immunity. . . . UTHSCH

is therefore protected by sovereign immunity."); *see also Scott v. Pfizer Inc.*, 182 F. App'x 312, 315

(5th Cir. 2006) (holding that the University of Texas Medical Branch "is an agency of the State of

Texas, giving it Eleventh Amendment immunity.").

King's *qui tam* claim is dismissed for failure to state a claim under the FCA.

**B.     The Retaliation Claim**

UTHSCH argues that King's FCA retaliation claim should be dismissed because, as an arm

of the State of Texas, it is not a proper defendant under the language of § 3730(h).[7]  UTHSCH relies

---

[7]  31 U.S.C. § 3730(h) states in part:

> (1) In general. – Any employee, contractor, or agent shall be entitled
> to all relief necessary to make that employee, contractor, or agent
> whole, if that employee, contractor, or agent is discharged, demoted,
> suspended, threatened, harassed, or in any other manner
> discriminated against in the terms and conditions of employment
> because of lawful acts done by the employee, contractor, agent or
> associated others in furtherance of an action under this section or
> other efforts to stop 1 or more violations of this subchapter.

on *Elizondo v. Univ. of Tex. at San Antonio*, 2005 WL 823353 (W.D. Tex. Apr. 7, 2005).  (Docket

Entry No. 21, at 11–12).  Alternatively, UTHSCH argues that King's retaliation claim is barred by

sovereign immunity.  (*Id*. at 12–14).

    Before 2009, § 3730(h) provided that a relator could bring a retaliation claim against her

"employer."  In *Elizondo*, the court applied the Supreme Court's reasoning in *Stevens* to hold that,

for the same reasons that a state is not a "person" under the FCA's *qui tam* provisions, a state is not

an "employer" under the FCA's antiretaliation provision.  2005 WL 823353, at *4.  In 2009,

Congress amended the FCA and removed the term "employer" from the antiretaliation provision.

At least one court has found that the change to the FCA's language means that *Elizondo*'s holding

that states are not employers under § 3730(h) is "no longer on all fours."  *Bell v. Dean*, 2010 WL

1856086, at *4–5 (M.D. Ala. May 4, 2010).

    The amendment to § 3730(h) does not alter the result that UTHSCH is entitled to dismissal

of King's retaliation claim.  King's claim for monetary relief against UTHSCH is barred by

sovereign immunity.  In *United States ex rel. Foulds v. Tex. Tech Univ.*, 171 F.3d 279 (5th Cir.

1999), the Fifth Circuit held that sovereign immunity prevented a plaintiff from seeking damages

under § 3730 against a public university hospital in Texas.  *Id.* at 294–95; *see also Nelson v. Univ.

of Tex. at Dall.*, 535 F.3d 318, 320 (5th Cir. 2008) (holding that sovereign immunity barred money

---

        (2) Relief. – Relief under paragraph (1) shall include reinstatement
        with the same seniority status that employee, contractor, or agent
        would have had but for the discrimination, 2 times the amount of
        back pay, interest on the back pay, and compensation for any special
        damages sustained as a result of the discrimination, including
        litigation costs and reasonable attorneys' fees. An action under this
        subsection may be brought in the appropriate district court of the
        United States for the relief provided in this subsection.

claims against a state university hospital in Texas).  The 2009 amendment to § 3730(h) does not alter *Foulds*' holding.  The FCA's antiretaliation provision does not include a clear statement stripping state sovereign immunity.  King provides no other reason for concluding that Congress has abrogated or that UTHSCH has waived its sovereign immunity.

King's retaliation claim is dismissed for lack of jurisdiction.[8]

## IV.   Conclusion

The motion to dismiss for failure to state a claim and lack of subject-matter jurisdiction, (Docket Entry No. 20), is granted.

SIGNED on October 31, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[8] Given these holdings, this court need not reach the issue of whether King's allegations are sufficient under Rules 8, 9, and 12(b)(6).